# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEVEN DOYLE HORNE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-251-FHS-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Steven Doyle Horne requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on October 19, 1959, and was forty-nine years old at the time of the administrative hearing. (Tr. 63). He graduated from high school (Tr. 198), and has worked as an industrial mechanic (Tr. 51). The claimant alleges that he has been unable to work since January 4, 2007, due to a tumor on his kidney, gout, heart murmur, depression, restless leg syndrome, hepatitis C, and Barrett's esophagus. (Tr. 191).

## Procedural History

The claimant applied on January 19, 2007 for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 168-170, 173-176). His applications were denied. ALJ John W. Belcher held an administrative hearing and determined the claimant was not disabled in a written opinion dated December 15, 2009. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant could perform the full range of light work under 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, he could lift/carry 20 pounds frequently and occasionally, stand/walk two hours in an eight-hour workday, and sit six hours in an eight-hour

workday, but imposed the additional limitations of only occasionally climbing stairs, ladders, ropes, and scaffolding; occasionally balancing, bending, stooping, crouching, crawling, or kneeling; and only occasional concentrated exposure to extreme heat/cold, wetness, humidity, vibration, fumes, odors, dust, toxins, gases, poor ventilation, hazardous or fast machinery, and unprotected heights. The ALJ further limited the claimant to performing only simple tasks. (Tr. 16). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work that he could perform, *e. g.*, order clerk, semi-conduction assembler, or optical goods assembler. (Tr. 22).

### Review

The claimant contends that the ALJ erred: (i) by failing to provide him with a full and fair hearing, (ii) by improperly assessing his mental impairments, (iii) by improperly picking and choosing evidence in assessing his RFC, and (iv) by failing to properly analyze his credibility. The undersigned Magistrate Judge finds that the ALJ did fail to properly assess the claimant's credibility, and the decision of the Commissioner should therefore be reversed.

The ALJ found that the claimant had the sole severe impairment of depression. (Tr. 12). The record reveals that the claimant's medical history included a cadaver kidney transplant in April 1998 (Tr. 394), a laparoscopic cholecystectomy in December 2004, and a mass on the remaining native kidney resulting in a right nephrectomy in 2007. (Tr. 394-395, 437-438, 450-451, 627-628). A December 2004 upper GI endoscopy revealed the existence of Barrett's esophagus. Dr. John Hood examined the

claimant for Barrett's esophagus on January 17, 2008, and recommended continuation of acid suppression therapy. (Tr. 631-633). In March 2007, the claimant requested and was given a letter stating that he could return to work, but could not do any type of welding. (Tr. 439). In November 2008, Dr. Robert Gold stated that he believed the claimant "would qualify for disability based on his history of hepatitis C and the fact that he is on Coumadin." (Tr. 734). Dr. Gold reiterated this opinion on September 14, 2009, and cited in support the claimant's kidney transplant, chronic renal insufficiency, history of atrial fibrillation, and history of cancer of the native kidney, and again on October 28, 2010, when he stated that he believed the claimant was "100 percent disabled" because his renal function showed "a calculated GFR of approximately 25 mL/min with a creatinine of 2.69" and he was mildly anemic. (Tr. 800, 816).

In September 2007, a state reviewing physician found the claimant's mental impairments to be non-severe and well-controlled with medications. (Tr. 466-479). Upon referral, the claimant was evaluated at Laureate Psychiatric Clinic and Hospital and diagnosed with depressive disorder, NOS, with a current global assessment of functioning (GAF) score of 45. (Tr. 493). On January 23, 2008, the claimant was evaluated at CREOKS Medical Health Center in Okmulgee and assessed a GAF of 50. (Tr. 679-695). A January 8, 2009 Medical Source Statement completed by a Licensed Professional Counselor (LPC) at CREOKS noted that the claimant had a marked limitation in understanding and remembering complex instructions; extreme limitations in carrying out complex instructions and making judgments on complex work-related decisions; and marked and/or extreme limitations in interacting appropriately with

supervisors, co-workers, and the public. (Tr. 746-747). Dr. Vanessa Werlla completed a similar statement on August 12, 2009. (Tr. 792-794). The ALJ referred the claimant for further evaluation, and clinical psychologist Dr. John Hickman performed the consultative evaluation. Dr. Hickman found that the claimant's affect was blunted and his mood depressed, and that he was functioning in the average range of mental ability. Dr. Hickman noted that people with the claimant's assessed personality type experienced moderate emotional distress characterized by dysphoria, agitation, and anhedonia; and that, *inter alia*, their prognosis is generally poor given the characterological nature of their problems, preferring to focus on physical symptoms rather than dealing with psychological problems. (Tr. 754). Dr. Hickman assigned him a GAF of 55, then found that the claimant did not meet SSI disability criteria, but that he did not expect the claimant's functioning to change in the near future and that his prognosis was guarded secondary to his medical difficulties. (Tr. 751, 755).

The ALJ held two separate administrative hearings in this case, after halting the first hearing to obtain an evaluation of the claimant's mental impairments. At these hearings, the claimant's testimony revealed that his medications caused him either diarrhea or severe stomach cramps in the mornings, that he gets irritable around people and therefore does not like to be around a lot of people, that his treating physician had prescribed Lexapro for his anxiety and had been increasing to the dosage so that he was on the maximum amount. (Tr. 67-68). At the first hearing, the ALJ asked the claimant why he had only visited CREOKS one time, and the claimant answered that that they had assigned him to a counselor, and not a doctor; that he had heard they were not very

organized; and that because he was "still ticked off at the world about whatever." (Tr. 73-74).[2] At the second hearing, the claimant provided a list of approximately ten medications that he was taking, and explained that although he felt that the medications were working he did feel side effects including a great deal of lethargy, as well as dizziness, occasional nausea, stress headaches, and difficulty sleeping. (Tr. 34-35). He explained that he had been taking care of he and his wife's two young children, but that because he worried about falling asleep and not being able to properly care for them, his wife had taken over those duties. (Tr. 36-37). He also stated that he worried a lot about his health, that he was being treated twice a week at CREOKS, and that his wife usually drove him because he worried about falling asleep on the highway. (Tr. 38-40, 42). He stated that he did not think that he could physically work due to the side effects of the 20 pills a day that he was taking. (Tr. 43-44).

In his written decision, the ALJ summarized the claimant's testimony and the medical evidence. The ALJ favorably cited the state reviewing physician's opinion that found the claimant could do light work with no other limitations, and adopted it as to the exertional limitations, but rejected the portion that found no other limitations due to the side effects of the claimant's medications. (Tr. 17-18). The ALJ also acknowledged the MSSs submitted by the CREOKS counselor and Dr. Werlla, but gave them little weight

---

[2] In addition to advising the claimant to keep in touch with his heart doctors because of the amount of hair growing in his ears, the ALJ also told the claimant to stop smoking. (Tr. 70-71, 76). When the claimant explained that his wife also smoked and he had difficulty with quitting, the ALJ stated that maybe the claimant's wife needed "some leadership," that he should "Be a man" and "Quit first. Drag her along with you. Grab her by the hair." (Tr. 78-79). He further told the claimant to exercise, which would put on muscle weight that would allow him to "slap that cigarette out of her hand." (Tr. 79). Although these statements are not the basis for reversal, the Court notes that such statements are improper and unnecessary.

because their opinions "did not attest by a reasonable degree of medical or psychological probability, medical history, clinical and laboratory findings, diagnosis, prescribed treatment and response, and prognosis." (Tr. 18-19). The ALJ also discussed Dr. Gold's MSSs, giving greater weight to the one from September 2009, and noting that he had "incorporated portions of both as reflected in the RFC findings of this decision." (Tr. 19). He also noted Dr. Gold's opinion that the claimant was disabled, but opined that it was "not clear" that Dr. Gold was familiar with the Social Security Administration's definition of "disability," and that that determination was reserved to him. (Tr. 19). The ALJ then gave great weight to Dr. Hickman's opinion as "being consistent with the claimant's evidence of record." (Tr. 20). He then found that "the claimant's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional assessment" (Tr. 16). Continuing, the ALJ stated that the claimant's allegations of side effects from his medications was not supported by the record; that because the claimant had not sought treatment for his mental impairments, it could not amount to the extreme limitations reflected in the assessments from the counselor and Dr. Werlla; and that if the limitations were as extreme as alleged, he expected the claimant's wife would have testified or submitted evidence. (Tr. 20).

  A credibility determination is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias v. Secretary of Health & Human Services,* 933 F.2d 799, 801 (10th Cir. 1991). In assessing complaints of pain, an

ALJ may disregard a claimant's subjective complaints if unsupported by any clinical findings. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987). But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted]. A credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). The ALJ's credibility determination fell below these standards. The ALJ mentioned that he had considered the requirements of Social Security Ruling 96-7p, but he made no mention of the requisite credibility factors set forth in *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987) and further failed to apply them to the evidence.[3] Although an ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), "simply 'recit[ing] the factors'" is insufficient. *Hardman*, 362 F.3d at 678, *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *4. Here, the ALJ mentioned Soc. Sec. R. 96-7p and briefly summarized the medical evidence (including the testimony of the claimant), but did not affirmatively link any of the factors to specific evidence. *See Kepler*, 68 F.3d at 391 (The ALJ must "explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not

---

[3]The factors to consider in assessing a claimant's credibility are: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (5) treatment for pain relief aside from medication; (6) any other measures the claimant uses or has used to relieve pain or other symptoms; (7) any other factors concerning functional limitations. Soc. Sec. Rul. 96-7p, 1996 WL 374186 at *3.

credible."); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) ("The ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence[.]").

Further, the comment that "[t]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" showed an improper approach to credibility. The problem with the ALJ's analysis of the claimant's credibility (apart from vagueness) is that he should have *first* evaluated the claimant's testimony (along with all the other evidence) according to the guidelines *and only then* formulated an appropriate RFC, not the other way around, *i. e.,* the ALJ apparently judged the credibility of the claimant's testimony by comparing it to a pre-determined RFC. *See, e. g., Bjornson v. Astrue*, 2012 WL 280736 at *4-5 (7th Cir. Jan. 31, 2012) (slip op.) (in addressing nearly identical language, "[T]he passage implies that ability to work is determined first and is then used to determine the claimant's credibility. That gets things backwards  The [ALJ] based his conclusion that Bjornson can do sedentary work on his determination that she was exaggerating the severity of her headaches. Doubts about credibility were thus critical to his assessment of ability to work, yet the boilerplate implies that the determination of credibility is deferred until ability to work is assessed without regard to credibility, even though it often can't be."). And although he discussed much of the medical evidence, including the claimant's testimony, evidence of his limitations from CREOKS and Dr. Gold, the ALJ wholly failed to specify any evidence

that caused him to disbelieve the claimant and instead adopted only those parts of the opinions that agreed with his assumed RFC.

Last, although the ALJ was not required to give controlling weight to any opinions that the claimant was disabled or unable to perform even sedentary work, the ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. Dr. Gold expressed such an opinion on multiple occasions, but the ALJ only referred to the first such occasion and merely stated that it went to an issue reserved to the Commissioner while specifically failing to mention Dr. Gold's supporting medical evidence that included the claimant's decreased renal function. But even if Dr. Gold's opinion *was not* entitled to controlling weight, the ALJ should have determined the proper weight to give it by applying all of the factors in 20 C.F.R. § 404.1527. *See Langley*, 373 F.3d at 1119. *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("[An ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.") [quotation omitted]. *But see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. Ms. Oldham cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion. . . . The ALJ provided good reasons in his decision for the

weight he gave to the treating sources' opinions. Nothing more was required in this case."). The ALJ failed to perform the proper analysis here.

Because the ALJ failed to analyze the claimant's credibility in accordance with *Kepler* and *Hardman*, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis. If such analysis requires any adjustment to the claimant's RFC on remand, the ALJ should re-determine what work she can perform, if any, and ultimately whether she is disabled.

**Conclusion**

In summary, the undersigned Magistrate Judge PROPOSES a finding by the Court that correct legal standards were not applied and that the decision of the Commissioner is therefore not supported by substantial evidence. The undersigned Magistrate Judge also RECOMMENDS that the Commissioner of the Social Security Administration's decision be REVERSED and the case REMANDED to the ALJ for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 7th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma